DOWNEY BRAND LLP
MICHAEL J. THOMAS (Bar No. 172326)
mthomas@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone: 916.444.1000
Facsimile: 916.444.2100

Attorneys for Plaintiff Alliance Tree Service, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| ALLIANCE TREE SERVICE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO LOPEZ, an individual doing business as ALLIANCE TREE CARE and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ALLIANCE TREE SERVICE, INC. ("Plaintiff" or "Alliance") alleges as follows:

**INTRODUCTION**

1. For more than twenty years, Alliance has provided tree care services to homeowners and businesses throughout Yolo County under the name ALLIANCE TREE SERVICE. It built that business methodically: through consistent work, repeat customers, and word-of-mouth referrals that, over time, made "Alliance" a name customers knew, trusted, and sought out.

2. Defendant Alejandro Lopez ("Lopez") watched that happen. As a former Alliance employee and the brother of Alliance's founder, Lopez knew exactly what the ALLIANCE name represented and the value it carried.

3. Seeing the success his brother had built, Lopez decided to leave Alliance and venture out on his own. But his new venture commandeered something important from the



DOWNEY BRAND LLP

original one: the ALLIANCE name. Lopez began offering the same tree care services, in the same communities, to the same customer base, under the name ALLIANCE TREE CARE – a name virtually identical to Plaintiff's brand, which differs from Plaintiff's only by swapping one generic word for another, namely service for care. He even adopted the abbreviation "ATC," closely mirroring Alliance's longstanding "ATS."

4. Alliance told him to stop. Alliance's trademark counsel sent Lopez a detailed cease-and-desist letter enclosing Alliance's California trademark registration certificate, and explaining point by point why Lopez's use of ALLIANCE TREE CARE infringed. The letter also identified that Lopez's then-current domain, www.emergencytreeservicessacramento.com, contained no infringing term and that rebranding would therefore be simple.

5. Lopez's response to the letter was twofold. On the one hand, he ignored Alliance's demand, continued his infringing conduct, and exacerbated the likelihood of consumer confusion. On the other hand, he doubled down by progressively encroaching on Plaintiff's mark and expanding the infringement, registering in May 2025 the infringing domain name www.alliancetreecare.net, thereby embedding Plaintiff's mark into Lopez's domain name for the first time, and moving his website to the infringing www.alliancetreecare.net.

6. Alliance gave Lopez one final opportunity to stop through an August 10, 2026, demand letter. He ignored the letter, but twenty days later contacted his brother and made a telling admission. In the same message in which Lopez insisted there was no confusion between the two businesses, he admitted that customers seeking his brother's services routinely contacted him instead. His own words thus contradicted his denial: customers looking for Alliance were reaching Lopez and were confused as to the source of the services.

7. Because Lopez has refused to cease infringing Plaintiff's valuable marks, Plaintiff has no choice but to pursue this action.

## PARTIES

8. ALLIANCE TREE SERVICE, INC. is a corporation organized and existing under the laws of the State of California, based in Woodland, CA, and doing business throughout Yolo County.

9. Plaintiff is informed and believes, and on that basis alleges, that Defendant ALEJANDRO LOPEZ is an individual residing in this judicial district, and that at all times relevant to this Complaint Lopez was doing business in at least Yolo County, State of California.

10. Plaintiff is informed and believes, and on that basis alleges, that Lopez operates as a sole proprietorship using the infringing mark ALLIANCE TREE CARE ("ATC").

11. Plaintiff does not know the true names and capacities of the defendants sued herein as Does 1 through 20 ("Doe defendants"), inclusive, and therefore sues said Doe defendants by fictitious names. Plaintiff is informed and believes and based on such information and belief avers that each of the Doe defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiff will amend this Complaint to set forth the true names and capacities of each Doe defendant when same are ascertained.

12. Plaintiff is informed and believes and based on such information and belief avers that defendants and Doe defendants 1 through 20 inclusive, and each of them, are, and at all material times have been, the agents, servants, or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein.

13. Each defendant named herein, including Does, is believed to and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

## JURISDICTION

14. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

15. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative fact.

16. This Court has personal jurisdiction over Defendant because Lopez resides in and is domiciled in California and within this District, Alliance Tree Care holds out a place of business

in this District, and all of the acts giving rise to this Complaint were committed in and directed at this District.

17. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because Defendant resides in this District and because a substantial part of the events giving rise to Plaintiff's claims occurred here.

## GENERAL ALLEGATIONS

### *Alliance and the ALLIANCE Marks*

18. Since at least as early as 2004, and continuously for more than twenty years, Plaintiff has used the ALLIANCE TREE SERVICE mark and the abbreviation ATS (collectively, the "Alliance Marks") in commerce to advertise and identify its tree care services, including stump grinding, tree trimming, and tree removal (the "Services"). Through that longstanding use, Plaintiff has built substantial goodwill among residential and commercial customers throughout Yolo County, California, including the cities of Woodland, Davis and the surrounding areas.

19. In addition to its longstanding use of the ALLIANCE TREE SERVICE brand, Plaintiff secured California Trademark Registration No. 02037840 for the ALLIANCE TREE SERVICE mark, covering "tree trimming, tree pruning, tree thinning, tree removal, tree stump removal." The registration issued on March 26, 2024, and is valid and subsisting.

20. Plaintiff has invested substantial time, effort, and money over more than two decades in advertising and promoting the Services under the Alliance Marks, including through vehicle and equipment signage, uniforms, printed advertising, its website, online directory listings including Google and Yelp, and customer referral programs.

21. The Alliance Marks are arbitrary as applied to tree care services and are therefore inherently distinctive. Moreover, as a result of Plaintiff's long and continuous use, the Alliance Marks have become well known among consumers in Plaintiff's service area. Consumers understand ALLIANCE, in connection with tree care services, to identify a single source, and that source is Plaintiff.

/ / /

### *Defendant's Adoption of the Infringing Marks*



DOWNEY BRAND LLP

22. Plaintiff is informed and believes and on that basis alleges that in 2024, after leaving Plaintiff's employ, Lopez began operating a tree care business under the name ALLIANCE TREE CARE and the abbreviation ATC (collectively, the "Infringing Marks").

23. The Infringing Marks are confusingly similar to the Alliance Marks. ALLIANCE TREE CARE appropriates Plaintiff's distinctive ALLIANCE term in its entirety, retains the term TREE, and substitutes the generic term CARE for the generic term SERVICE. That substitution does nothing to distinguish source. Likewise, ATC differs from Plaintiff's ATS by a single letter.

24. Defendant has nonetheless specifically targeted Plaintiff's Yolo County market. Defendant's website is titled "Alliance Tree Care: Tree Service Woodland CA," and solicits customers needing "tree removal, trimming, or stump grinding in Woodland CA." Defendant therefore offers the same services, under a confusingly similar name, and in the same county in which Plaintiff has operated for more than twenty years.

25. Moreover, Defendant's adoption of the Infringing Marks was undertaken with actual knowledge of the Alliance Marks and with the intent to trade upon and appropriate for himself the goodwill Plaintiff spent more than twenty years and substantial sums building, as Lopez is a former employee of Plaintiff and the brother of Plaintiff's founder.

***Confusion in the Marketplace***

26. Defendant's use of the Infringing Marks has already caused, continues to cause, and is likely to continue causing consumer confusion, mistake, and deception as to Defendant's affiliation, connection, sponsorship, or association with Plaintiff and as to the origin, sponsorship, or approval of Defendant's services.

27. Not a week goes by without Plaintiff receiving telephone calls from members of the public who are confused as to whether Plaintiff and Defendant are the same business or are affiliated with one another. Among other things, callers ask whether the two businesses are related, whether Plaintiff has changed its name, whether Plaintiff has opened a second location, and whether the person they spoke with at one business also works at the other.

28. Plaintiff has also received numerous complaints from dissatisfied customers whom Plaintiff never served. These consumers hired Defendant, were dissatisfied with the work



DOWNEY BRAND LLP

DOWNEY BRAND LLP

Defendant performed, and contacted Plaintiff to complain in the mistaken belief that Plaintiff had performed the work or was responsible for it.

29. Plaintiff is therefore being blamed for work it did not perform and over which it has no control. Each such complaint inflicts direct injury on and tarnishes the reputation and goodwill that Plaintiff has spent more than twenty years building, and Plaintiff has no means of preventing or correcting that injury so long as Defendant continues to operate under the Infringing Marks.

30. Lopez himself has acknowledged the confusion. In an August 30, 2026, message, sent just twenty days after receiving Plaintiff's second cease-and-desist letter, Lopez admitted that he had been contacted "multiple times" by customers who were actually seeking Plaintiff's services.

31. That confusion is hardly surprising. A Google search for "Alliance Tree" conducted in Plaintiff's service area returns Plaintiff's listing and Defendant's listing adjacent to one another, in nearly identical form, both categorized as "Tree service."

32. Likewise, a Google search for "Alliance Tree Service" or "ATS," that is, a search for Plaintiff by its exact business name, returns Defendant's "Alliance Tree Care" among the top organic results, alongside Plaintiff's own listings. Third-party search platforms thus repeatedly conflate the two businesses, reflecting the same confusion that consumers themselves experience.

33. More troubling still, the shared Lopez surname further increases the likelihood that consumers will mistakenly believe the parties' businesses are affiliated. Alliance has built its business largely through word-of-mouth referrals and recommendations from satisfied customers. Those referrals often take the form of simple statements such as, "Go to Alliance owned by Lopez" or words to that effect. Because both businesses use the ALLIANCE name and share the Lopez family name, consumers have no reliable way to determine which business the recommendation was intended to identify, particularly where an orally conveyed trade name is rarely repeated with precision and the distinction between "Service" and "Care" is easily lost. The confusion extends beyond consumers: because the businesses use many of the same vendors and suppliers, invoices and bills intended for Defendant are routinely sent to Plaintiff instead.

***Defendant's False Statements Exacerbate the Likelihood of Confusion***

34. To make matters worse, on his website, Defendant published a false statement that he was a co-founder of Plaintiff. Of course, Lopez neither founded nor co-founded Plaintiff. Plaintiff was founded by Lopez's brother, Alberto Lopez, and Lopez has never held any ownership interest in the business. In making this false statement, Lopez exacerbated the likelihood of confusion as to sponsorship, association or affiliation between Plaintiff and Defendant.

35. Plaintiff's initial demand letter identified this statement as evidence of Defendant's bad faith. Defendant thereafter removed the statement from his website but left the same representation on his Google Business Profile and other online platforms, where it remains published as of the filing of this Complaint and reaches consumers at the very moment they are attempting to locate Plaintiff.

36. Defendant's representation is a statement of fact, not opinion or puffery, and is capable of being proven true or false. It is material because consumers selecting a tree care contractor reasonably rely on representations concerning the contractor's experience, credentials, licensure, and affiliations. Defendant disseminated this representation to the consuming public through his website, Google Business Profile, and national advertising platforms. Defendant's representation was knowingly false when made.

***Defendant's Domain Name***

37. At the time of Plaintiff's initial demand letter, Defendant operated a website at the domain www.emergencytreeservicessacramento.com, which did not incorporate the ALLIANCE name.

38. Plaintiff's initial demand letter expressly noted that because Defendant's domain did not contain the ALLIANCE name, Defendant could rebrand with relative ease and that "[a] few simple modifications will work."

39. Rather than rebranding, Defendant registered or acquired the domain name alliancetreecare.net and moved his web presence to it, incorporating Plaintiff's distinctive ALLIANCE mark into his domain name for the first time. Thus, after receiving written notice that his use of the ALLIANCE name was causing confusion, Defendant took steps that made the parties' online identities even more similar and the resulting confusion even more likely.

***Plaintiff's Demands and Defendant's Refusal***

40. Plaintiff, through its then-trademark counsel, sent Lopez an initial written demand to cease-and-desist his infringing conduct. The letter enclosed Plaintiff's trademark registration certificate and examples of Defendant's infringing uses, specifically identified the marks and services at issue, and demanded that Defendant cease all use of ALLIANCE and ATC; destroy infringing materials; remove ALLIANCE from all online advertising, including third-party websites, Yelp, and Google Maps; and discontinue use of any email address containing ALLIANCE or ATC.

41. Defendant did not respond to the letter or comply with any of its demands. Instead, he used the letter as a roadmap, removing the "co-founding" statement identified in the letter from his website while changing his domain name to incorporate the ALLIANCE name for the first time.

42. On August 10, 2026, Plaintiff, through undersigned counsel, sent Lopez a second written demand to cease and desist. (**Exhibit A**.) The letter explained the grounds for Plaintiff's infringement claims, noted that Defendant's alterations to his website following the initial demand letter constituted further evidence of knowing and bad-faith infringement, and demanded a written response.

43. Defendant did not provide the requested assurances and has not complied. Twenty days later, in a text message sent to a family group chat that included his brother, Plaintiff's founder, Lopez admitted that he had been contacted "multiple times" by customers who were actually seeking Plaintiff's services.

44. Defendant knowingly and deliberately adopted the Infringing Marks to cause confusion or mistake, or to deceive. His infringement is willful, not innocent.

45. As a direct and proximate result, Plaintiff has suffered and continues to suffer lost sales and injury to its reputation and goodwill in an amount to be proven at trial.

46. Plaintiff has no adequate remedy at law. Defendant's continued use of the Infringing Marks causes irreparable harm by creating confusion, associating Plaintiff with services it does not control, and damaging the reputation Plaintiff spent more than twenty years building.

DOWNEY BRAND LLP

**FIRST CAUSE OF ACTION**

**Federal Unfair Competition – Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1)(A)**

**(Against All Defendants)**

47. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

48. Plaintiff owns the Alliance Mark by virtue of more than twenty years of continuous use in commerce in connection with the Services, long prior to any use by Defendant. Through that use and Plaintiff's substantial investment in advertising, the Alliance Mark has become well known among consumers in Plaintiff's service area. The Alliance Mark, taken as a whole, is arbitrary and therefore inherently distinctive, and consumers in Plaintiff's service area understand ALLIANCE TREE SERVICE to designate a single source, namely, Plaintiff.

49. Defendant uses the Infringing Mark in interstate commerce to advertise and sell tree care services through his website, domain name, Google Business Profile, and other online platforms.

50. Compared in their entireties, the marks are confusingly similar. Each consists of three words; two are identical and appear in identical sequence, at the beginning of each mark where consumer attention and recall are greatest; and they differ only by substitution of one generic term for another. That difference is neither source-identifying nor memorable, and is especially likely to be lost in the oral, word-of-mouth referrals through which Plaintiff has long obtained customers. Defendant compounds the similarity by offering identical services to the same customers in the same market through the same channels.

51. Defendant's use is likely to cause consumer confusion and has caused actual confusion, as alleged above, including but not limited to weekly calls from confused consumers, complaints from customers Plaintiff never served, search results conflating the two businesses, and Lopez's own admission that consumers seeking Plaintiff have contacted Defendant "multiple times."

52. Defendant adopted the Infringing Mark with actual knowledge of Plaintiff's rights and with intent to appropriate Plaintiff's goodwill and his conduct is willful: after written notices, Defendant expanded rather than curtailed his use. Defendant's conduct is likely to cause

confusion as to affiliation, connection, association, origin, sponsorship, and approval, in violation of 15 U.S.C. § 1125(a)(1)(A), and has caused Plaintiff lost sales and irreparable injury to its reputation and goodwill for which it has no adequate remedy at law.

53. As a direct and proximate result of Defendant's actions as alleged herein, Plaintiff has been damaged.

54. As a result of the foregoing, this case is exceptional within the meaning of 15 U.S.C. § 1117, and Plaintiff seeks damages, Defendant's profits, exemplary damages, attorney's fees, and preliminary and permanent injunctive relief as set forth herein.

**SECOND CAUSE OF ACTION**

**Infringement of a California-Registered Mark – Cal. Bus. & Prof. Code § 14245**

**(Against All Defendants)**

55. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

56. Plaintiff owns California Trademark Registration No. 02037840 for ALLIANCE TREE SERVICE, issued March 26, 2024, covering tree trimming, pruning, thinning, removal, and stump removal. The registration is valid and subsisting.

57. Without Plaintiff's consent, Defendant uses a reproduction, copy, or colorable imitation of the registered mark in connection with the sale, offering, distribution, and advertising of services in California in a manner likely to cause confusion, mistake, or deception, and has applied that reproduction to signs, prints, advertisements, and other materials intended for use in commerce. Defendant did so knowing of the registration, a certificate of which accompanied Plaintiff's initial demand letter, entitling Plaintiff to treble damages and fees under Cal. Bus. & Prof. Code § 14250.

58. As a direct and proximate result of Defendant's actions as alleged herein, Plaintiff has been damaged.

59. As a result for the foregoing, Plaintiff seeks damages, Defendant's profits, and preliminary and permanent injunctive relief as set forth herein.

**THIRD CAUSE OF ACTION**

**Trademark Infringement – California Common Law**

**(Against All Defendants)**

60. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

61. Through more than twenty years of continuous use in California, and by virtue of the Alliance Mark's inherently distinctive nature, Plaintiff owns common law rights in the Alliance Mark within its service area, senior to any rights Defendant may claim.

62. Defendant's use of the Infringing Mark for identical services in Plaintiff's market has caused and is likely to cause confusion as to source, sponsorship, affiliation, and approval, constituting trademark infringement under California common law. Defendant acted willfully and with intent to appropriate Plaintiff's goodwill, amounting to oppression, fraud, or malice under Cal. Civ. Code § 3294. Plaintiff is entitled to its damages, disgorgement of Defendant's profits, exemplary damages, and injunctive relief.

63. As a direct and proximate result of Defendant's actions as alleged herein, Plaintiff has been damaged.

64. As a result for the foregoing, Plaintiff seeks damages, Defendant's profits, and preliminary and permanent injunctive relief as set forth herein.

**FOURTH CAUSE OF ACTION**

**Unfair Competition – Cal. Bus. & Prof. Code § 17200 et seq.**

**(Against All Defendants)**

65. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

66. Defendant's acts described above are business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200.

67. Defendant's conduct is unlawful in that it violates 15 U.S.C. §§ 1125(a) and 1125(d), Cal. Bus. & Prof. Code §§ 14245 and 17500, and the common law. It constitutes unfair business acts and practices in that it violates the policy and spirit of those trademark and unfair competition laws and significantly threatens and harms competition in the market for tree care services in Plaintiff's service area, by causing consumers seeking Plaintiff's services to be diverted

DOWNEY BRAND LLP

to Defendant and by depriving consumers of the ability to distinguish between the parties' businesses. It constitutes fraudulent business acts and practices in that it is likely to deceive members of the public as to the parties' affiliation and as to Lopez's role in founding and operating Plaintiff.

68. Plaintiff has suffered injury in fact and lost money and property as a result of Defendant's conduct, including lost sales, diverted customers, and injury to the goodwill in the Alliance Mark, and therefore has standing under Cal. Bus. & Prof. Code § 17204. Plaintiff is entitled to injunctive relief under Cal. Bus. & Prof. Code § 17203, and to restitution to the extent any money or property in which Plaintiff has an ownership interest was acquired by means of Defendant's unfair competition.

69. As a result for the foregoing, Plaintiff seeks restitution and preliminary and permanent injunctive relief as set forth herein.

**FIFTH CAUSE OF ACTION**

**False Advertising – Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1)(B)**

**(Against All Defendants)**

70. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

71. In commercial advertising and promotion – on his website, Google Business Profile and other online platforms, directed to consumers in Plaintiff's market and disseminated through interstate platforms – Defendant represented that Lopez "co-found[ed] and r[an]" Plaintiff for nearly 20 years.

72. Those representations are literally false. Plaintiff was founded by Alberto Lopez; Lopez has never held an ownership interest and did not run Plaintiff, but was its employee. Alternatively, they are misleading in context, conveying that Defendant's business is the successor to or superior counterpart of Plaintiff's, operated by the person who built it. They have deceived or tend to deceive a substantial segment of the consuming public, and they are material because consumers selecting a tree care contractor rely on representations of experience, tenure, and affiliation.

73. Defendant acted knowingly. Plaintiff's initial demand letter identified the

statement and attached a screenshot of it; Defendant removed it from his website but left the identical representation on his Google Business Profile and other online platforms, where it remains today. Plaintiff has been injured in its sales, reputation, and goodwill as a direct and proximate result.

74. As a direct and proximate result of Defendant's actions as alleged herein, Plaintiff has been damaged.

75. As a result for the foregoing, this case is exceptional within the meaning of 15 U.S.C. § 1117, and Plaintiff seeks damages, exemplary damages, Defendant's profits, attorney's fees, and preliminary and permanent injunctive relief as set forth herein.

**SIXTH CAUSE OF ACTION**

**False Advertising – Cal. Bus. & Prof. Code § 17500 et seq.**

**(Against All Defendants)**

76. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

77. With intent to dispose of services and induce their purchase, Defendant disseminated before the California public untrue or misleading statements concerning those services and Defendant's affiliation with Plaintiff, including that Lopez "co-found[ed] and r[an]" Plaintiff for nearly 20 years. Defendant knew, or with reasonable care should have known, those statements were untrue or misleading when made.

78. Defendant disseminated the statements through his website, Google Business Profile, and other online platforms, reaching California consumers at the moment they sought to locate Plaintiff. Plaintiff has suffered injury in fact and lost money and property, entitling it to injunctive relief and restitution under Cal. Bus. & Prof. Code § 17535.

79. As a direct and proximate result of Defendant's actions as alleged herein, Plaintiff has been damaged.

80. As a result for the foregoing, Plaintiff seeks restitution, preliminary, and permanent injunctive relief as set forth herein.

**SEVENTH CAUSE OF ACTION**

**Cyberpiracy – Lanham Act § 43(d), 15 U.S.C. § 1125(d)**

**(Against All Defendants)**

81. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

82. The Alliance Mark was distinctive when Defendant registered or acquired alliancetreecare.net, having been inherently distinctive by virtue of its arbitrary nature and having been registered with the California Secretary of State on March 26, 2024. Defendant's domain is confusingly similar to the Alliance Mark: it reproduces the mark's first two words in identical sequence and substitutes one generic term for another.

83. Defendant registered, acquired, and uses the domain with bad faith intent to profit from the Alliance Mark. Defendant holds no intellectual property rights in the domain; it is not Lopez's legal name or any name used to identify him; Defendant made no prior bona fide use of it, having operated at the wholly dissimilar www.emergencytreeservicessacramento.com; his use is commercial rather than fair or noncommercial; he registered it to divert consumers from Plaintiff's online location for commercial gain by creating a likelihood of confusion as to source and affiliation; and he did so in 2025 only after Plaintiff's initial demand letter observed that his existing domain contained no term from the Alliance Mark and that rebranding would be straightforward. Defendant had no reasonable grounds to believe the registration or use was lawful.

84. Plaintiff is entitled to forfeiture, cancellation, or transfer of the domain under 15 U.S.C. § 1125(d)(1)(C) and, at its election before final judgment, to statutory damages under 15 U.S.C. § 1117(d).

85. As a direct and proximate result of Defendant's actions as alleged herein, Plaintiff has been damaged.

86. As a result for the foregoing, this case is exceptional within the meaning of 15 U.S.C. § 1117, and Plaintiff seeks damages, exemplary damages, Defendant's profits, statutory damages at its election, attorney's fees, and preliminary and permanent injunctive relief as set forth herein.

DOWNEY BRAND LLP

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1. That the Court enter judgment in favor of Plaintiff on each cause of action and find that Defendant's conduct was willful and that this is an exceptional case within the meaning of 15 U.S.C. § 1117(a);

2. For preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116(a), California Business and Professions Code sections 14250, 17203, and 17535, and this Court's inherent equitable authority, restraining Defendant and all persons acting in concert with him from using ALLIANCE, ATC, or any confusingly similar designation in connection with tree care services, from representing any affiliation with Plaintiff, and from making the false statements alleged herein, and requiring Defendant to remove all infringing and false content and to report compliance under oath;

3. For destruction or delivery up of all infringing materials pursuant to 15 U.S.C. § 1118, and for corrective advertising in a form approved by the Court;

4. For transfer of the domain name alliancetreecare.net to Plaintiff, or cancellation of that domain at Plaintiff's election, pursuant to 15 U.S.C. § 1125(d)(1)(C);

5. In the alternative as to the Seventh Cause of Action, for statutory damages of not less than $1,000 and not more than $100,000 per domain name pursuant to 15 U.S.C. § 1117(d), at Plaintiff's election;

6. For treble damages, together with Plaintiff's actual damages, Defendant's profits, and an accounting, pursuant to 15 U.S.C. § 1117(a) and California Business and Professions Code section 14250(a);

7. For restitution pursuant to California Business and Professions Code sections 17203 and 17535, to the extent any money or property in which Plaintiff has an ownership interest was acquired by means of Defendant's unfair competition and false advertising;

8. For compensatory damages on Plaintiff's common law claim, and for exemplary and punitive damages, including pursuant to California Civil Code section 3294;

9. For Plaintiff's reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a) and as otherwise permitted by law, and for costs of suit;

10. For prejudgment and post-judgment interest at the maximum rate allowed by law; and

11. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

DATED: September 25, 2026 DOWNEY BRAND LLP

By: */s/ Michael J. Thomas*
MICHAEL J. THOMAS
Attorneys for Plaintiff Alliance Tree Service, Inc.

# EXHIBIT A

DOWNEYBRAND
Michael J. Thomas
mthomas@downeybrand.com
916.520.5310 Direct
916.520.5710 Fax
Downey Brand LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814
916.444.1000 Main
downeybrand.com

August 10, 2026

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**AND E-MAIL TO 530ATC@GMAIL.COM**

Alejandro Lopez
Alliance Tree Care
2790 Chateau Montelena Way
Sacramento, CA 95834

**Re: Cease and Desist – Unauthorized Use of Alliance Trademark**

Dear Mr. Lopez:

We are trademark counsel to Alliance Tree Service, Inc. ("Alliance"), a respected and well-known tree service company that has faithfully served the Sacramento and Yolo County communities for more than two decades.

As Alliance's former employee and a close relative of its founder, you know firsthand that Alliance's success did not come overnight. Rather, it is the product of more than 20 years of substantial investment of time, effort, and financial resources into building and promoting its business, consistently providing high-quality tree care services, and cultivating lasting customer relationships. As a result of those efforts, Alliance has developed substantial goodwill and an outstanding reputation, both of which are closely associated with and embodied in the distinctive ALLIANCE brand.

It appears, however, that instead of building your own business from the ground up and earning your own reputation through hard work and dedication, you chose the easier route: profiting from the name your brother spent more than 20 years building by appropriating it as your own. The law, of course, does not condone such conduct. Nor does the law support your apparent contention that your years of employment with Alliance, including making purchases on the company's behalf, somehow conferred upon you an ownership interest in Alliance or any right to appropriate its identity for your own use. Your conduct ceased to be entrepreneurship when it crossed the line into illegality – and that line has plainly been crossed here.

As you were previously apprised in 2024, our client was the first to use the ALLIANCE name and has continuously used it ever since, thereby acquiring exclusive rights in the mark. Those rights are recognized as senior and superior under the common law, California law, and federal law, all of which entitle our client to enjoin junior users, such as yourself, from using confusingly similar marks in the same industry or market, or within our client's region of operations and any additional natural zone of expansion. (*Brookfield Communications, Inc. v. West Coast Entertainment Corp.* (1999) 174 F.3d 1036, 1047.) Our client is also the owner of a

California state trademark registration, Reg. No. 02037840, for "Tree trimming, tree pruning, tree thinning, tree removal, tree stump removal."

There can be no genuine dispute that your use of the name "Alliance Tree Care" to advertise the same services in the same geographic market is likely to cause consumer confusion. Just like our client, you offer a wide range of professional tree care services, and just like our client, you serve customers throughout the Sacramento and Yolo County communities. Unsurprisingly, a search for "Alliance tree" returns your business alongside our client's. Because consumers naturally rely on the distinctive term "Alliance" to identify and distinguish the source of the services, consumer confusion is not merely possible – it is inevitable.




More troubling still, your shared surname with Alliance's founder further increases the likelihood that consumers will mistakenly believe the parties' businesses are affiliated. As you know well, Alliance has built its business largely through word-of-mouth referrals and recommendations from satisfied customers. Those referrals often take the form of simple statements such as, "Go to Alliance owned by Lopez." Because both businesses use the ALLIANCE name and share the Lopez family name, consumers have no reliable way to determine which business the recommendation was intended to identify, creating precisely the type of confusion that trademark law is intended to prevent.



Your adoption of the abbreviation "ATC" – closely resembling Alliance's longstanding use of "ATS" – only exacerbates the likelihood of consumer confusion. Indeed, were a consumer to search for "ATS," the search results would display both Alliance Tree Service and Alliance Tree Care. The fact that even Google's search algorithm conflates the two businesses underscores the substantial likelihood of consumer confusion and the false impression that the businesses are related.




In practical terms, your replacement of the term "Service" with "Care" neither distinguishes your mark from Alliance's nor shields you from liability for trademark infringement. California courts have long recognized that when a junior user, such as yourself, appropriates the entirety of another's distinctive mark – in this case, "Alliance" – the mere addition of a descriptive term, such as "Care," is insufficient to avoid the resulting likelihood of consumer confusion. (See, e.g., *Electropix v. Liberty Livewire Corp.* (2001) 178 F.Supp.2d 1125, 1132 [holding that the defendants could not operate their business under the name "Livewire" in combination with terms such as "Studios," "Media," or "Network Services" in light of the senior user's "Live Wire" trademark]; *Golden Door, Inc. v. Odisho* (9th Cir. 1980) 646 F.2d 347, 350 [stating that the defendant's attempt to distinguish the name "Golden Door" by using the terms "Golden Door Coiffeur" and "Golden Door for Hair" was unpersuasive]; *Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.* (W.D. Wash. 2019) 364 F. Supp. 3d 1194, 1208 [holding that a reasonable juror could find the names "Clean Crawls" and "Crawl Space Cleaning Pros," as well as their respective abbreviations, "CCI" and "CSCP," sufficiently similar to create a likelihood of confusion, particularly in a word-of-mouth context where a trade name may not be perfectly articulated.])

The unlawful nature of your conduct was brought to your attention. Your response was twofold. First, rather than ceasing your unauthorized use of the ALLIANCE name, you ignored Alliance's cease-and-desist letter and continued to advertise and operate your business under a confusingly similar name. Second, instead of using the analysis set forth in that letter to remedy your unlawful conduct, you used it as a roadmap to conceal evidence of your bad faith. Specifically, Alliance's letter explained that your bad faith was evident from your website's statement that you had "co-founded" and "ran" "the other Alliance for nearly 20 years."

You state clearly and prominently on your website and the advertising website Angie's List that you were previously affiliated with Alliance Tree Services. Your use of an almost identical name and calling out that you were previously affiliated with Alliance Tree Services, indicates that your use of Alliance Tree Care is a deliberate attempt to fool consumers, take my client's customers, dilute my client's brand, and to utilize the goodwill (consumer recognition) that my client has developed over all these years of paying for advertising of Alliance Tree Services.




Recognizing that this admission undermined your position, you removed it from your website.



The letter also noted that your then-existing website address – www.emergencytreeservicessacramento.com – did not incorporate the ALLIANCE name, making it relatively simple to rebrand your business without further infringing our client's rights. Rather than taking that opportunity to adopt a lawful business identity, however, you did precisely the opposite: you changed your website's domain to www.alliancetreecare.net, embedding the ALLIANCE name directly into your online presence.

Your chosen course of conduct, of course, does nothing to conceal the evidence of your improper motives; it only highlights them. As such, this letter constitutes our client's second and final attempt to resolve this matter without litigation. Should you fail to comply with the demands set forth herein, our client will promptly initiate legal proceedings to enforce its rights and seek all available remedies, which include awards of injunctive relief, actual damages (including lost profits), disgorgement of your profits, enhanced damages up to three times actual damages, costs of the action, attorney's fees, and punitive damages. (15 USC § 1117; Cal. Bus. & Pro. Code § 14250.)

In view of your above described activities and the infringement of Alliance's rights, we demand that you immediately provide written assurances that Alliance Tree Care, including any of its officers, directors, employees, agents, or others acting on its behalf or under its direction, control, or request, will cease and desist immediately from further infringing our client's trademark.

Because the consumer confusion and damages caused by your infringing actions are ongoing and irreparable, if we do not receive written assurances by 5:00 p.m., August 17, 2026, that Alliance Tree Care will comply with the above demand, we will have no choice but to presume that you are not interested in resolving this matter informally.

This letter is not a complete recitation of all the claims, issues or facts related to this matter. This letter should not be construed as a waiver of any rights by Alliance Tree Service, including, without limitation, the right to seek monetary damages, preliminary and permanent equitable relief, and attorney's fees, all of which are expressly reserved.

Sincerely,

DOWNEY BRAND LLP

Michael J. Thomas

5282004